# In the United States Court of Federal Claims

Nos. 14-167C & 14-168C

(E-filed:  December 7, 2020)[1]

|  |  |
|---|---|
| GEORGIA POWER COMPANY and ALABAMA POWER COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Post-Trial Evidentiary Rulings; Demonstrative Exhibits; Counter-Designations of Deposition Testimony; Undisclosed Expert Opinion; FRE 401; FRE 402; FRE 602; FRE 701; FRE 801; FRE 803(6); FRE 807; FRE 1002; RCFC 32(a)(6). |

## EVIDENTIARY RULINGS ORDER

The court conducted a trial on damages in these cases from February 18, 2020, through March 6, 2020.[2]  The evidentiary record of the trial remains open to allow the court to review written arguments from the parties before ruling on the admissibility of certain pieces of evidence.  On May 4, 2020, the parties filed a joint status report identifying the evidence to which objections remain outstanding.  See ECF No. 179-1 (chart of evidentiary issues).  Thereafter, the parties filed an initial set of briefs addressing the outstanding evidentiary issues.  See ECF No. 181, ECF No. 182, ECF No. 184, ECF No. 185, ECF No. 186, and ECF No. 187.  On August 6, 2020, the court directed the parties to revise their submissions to clarify the discrete pieces of evidence it needs to consider, see ECF No. 195 (order).

---

[1]     This order was issued under seal on November 4, 2020.  See ECF No. 202.  The parties were invited to identify propriety or confidential material subject to deletion on the basis that the material is protected/privileged.  No redactions were proposed by the parties.  See ECF No. 203.  Thus, the sealed and public version of this order are identical, except for the publication date and this footnote.

[2]     All electronic case filings referenced in this order appear on the Georgia Power Co. v. United States, Case No. 14-167C docket unless otherwise stated.  The court notes that these cases were consolidated for purposes of discovery and trial.  See ECF No. 23 (order granting request to consolidate).

Presently before the court are the parties' revised briefs addressing the admissibility of that evidence, including: (1) defendant's revised initial brief, ECF No. 196; (2) plaintiffs' revised initial brief, ECF No. 197; (3) plaintiffs' revised response, ECF No. 198; (4) defendant's revised response, ECF No. 199; (5) defendant's revised reply, ECF No. 200; and (6) plaintiffs' revised reply, ECF No. 201. In addition to these filings, the court also reviewed relevant parts of the trial transcript, see ECF Nos. 162-177, and the parties' joint notice attaching a revised chart identifying the evidence at issue and an appendix thereof, see ECF No. 193, ECF No. 193-1 (revised chart of evidentiary issues); ECF No. 193-2 (appendix). This matter is fully briefed and ripe for decision.

This court applies the Federal Rules of Evidence (FRE) when evaluating the admissibility of evidence offered in proceedings before it. See 28 U.S.C. § 2503(b); FRE 1101(a). The court will rule on each of the issues presented by the parties in their briefs, but reminds the parties that if they have omitted a particular section of proffered testimony or a conditionally admitted exhibit, that evidence will not be addressed by the court, and therefore will not be part of the evidentiary record in these cases.

I.      Evidence for which Plaintiffs Are the Proponents

A.      Plaintiffs' Exhibit 115 (Issue Number 1)[3]

Plaintiffs' Exhibit 115 is a composite exhibit, and the parties agree that as such, "each part of [the] exhibit [must be] admissible in its own right." See ECF No. 201 at 5 (quoting ECF No. 184 at 2). Defendant objects to the admission of this exhibit on the basis that plaintiffs have failed to lay a proper foundation for the documents included therein, that the documents are hearsay, and that they violate the best evidence rule. See ECF No. 199 at 8-19.

Plaintiffs' Exhibit 115 is comprised of a number of different summaries and source documents related to plaintiffs' expert's fuel management model. See ECF No. 197 at 2-3; ECF No. 199 at 9-10. According to plaintiffs, the first thirty-three pages of the exhibit "are summaries of the inputs about which Mr. [John] Williams and Ms. [Eileen] Supko testified. That input information is contained within voluminous documents maintained by Plaintiffs, by Ms. Supko, and by the DOE." ECF No. 197 at 3. And "[t]he remaining documents in PX 115 . . . are a combination of [plaintiffs'] business records and public records of the [Nuclear Regulatory Commission (NRC)], with the accompanying [ ] NRC seal." Id. at 5. In their reply, plaintiffs state that "while [plaintiffs] demonstrated in [their] initial brief that pages 32 through 116 of PX 115 . . .

---

[3]      The issue numbers associated with each section in this order correspond to the number system reflected in the parties' chart identifying evidentiary issues for this court to resolve. See ECF No. 193-1.

are either [plaintiffs'] business records or self-authenticating public records, as reflected by the NRC seal, [plaintiffs] only rel[y] on the first thirty-one (31) pages of PX 115," which:

> comprise the fuel management model that the Kenrich Group prepared (1) to summarize voluminous data contained within multiple sources and (2) to "do the math" to show what the spent fuel pools at each of [plaintiffs'] plants would look like under certain conditions (i.e. if the Government had picked up spent nuclear fuel, as it would have in the non-breach world, or failed to pick up spent nuclear fuel, as it has in the breach world).

ECF No. 201 at 5-6.

Plaintiffs have not addressed the admissibility of each individual document that was submitted as part of Plaintiffs' Exhibit 115, and the court will not make assumptions with regard to which of plaintiffs' arguments for admissibility apply to each document. For this reason, defendant's objection to the portions of Plaintiffs' Exhibit 115 that have not been specifically addressed in the briefs now before the court is sustained.

The only part of the document on which plaintiffs intend to rely, and for which they make a substantive argument for admissibility, is the fuel management model reflected in the first thirty-one pages of the exhibit. See id. at 5. As plaintiffs note in both their initial brief and their reply, defendant stated in no uncertain terms during trial that it has no objection to the introduction of this model:

> MS JANTZEN:       And our understanding is, again, his—Mr. Metcalfe's methodology is no different than Mr. [sic] Supko's in terms of calculating the—putting together this model. We don't disagree with the model. We don't disagree with the numbers that are reflected here in terms of what assemblies would have been discharged in the nonbreach world, how much room there was, and how many, you know, casks were loaded in the time period and during the claim period that were required to go to dry cask storage.
>
> . . .
>
> This is just a number—a chart of numbers and it's just raw data here. We've heard from this. We don't—we don't dispute any of this. We did not cross-examine Ms. Supko on this model or any of these numbers. And so I don't see how this is something in dispute that needs to be addressed by this witness.

ECF No. 169 at 279 (Metcalfe).  Plaintiffs argue that "based on this concession at trial, [plaintiffs] truncated [their] examination of Mr. [Kenneth] Metcalfe related to his fuel management model," and as a result, defendant "should not now be permitted to whipsaw [plaintiffs] by attempting to exclude the first thirty-one (31) pages of PX 115 . . . from the record after conceding at trial that it had no objection to the contents of those pages." ECF No. 201 at 6-7.  Despite the fact that plaintiffs noted this statement from defendant's counsel in their initial brief, see ECF No. 197 at 4, defendant failed to address it in its response.  The court agrees with plaintiffs that defendant cannot now object to admission of these pages after so definitely stating at trial that it had no such objection.

Accordingly, defendant's objection to the admission of the first thirty-one pages of Plaintiffs' Exhibit 115 reflecting the fuel management model, is overruled, and these pages are admitted.

Defendant also argues that Plaintiffs' Exhibit 115 should be excluded because it violates the best evidence rule.  Specifically, defendant contends that the exhibit includes "handwriting that was never attributed to a specific individual."  See ECF No. 199 at 17. While plaintiffs insist that the handwriting has no substantive meaning and thus does not violate the best evidence rule, they also state that they would have "no objection if the Court were to affirmatively 'strike' the handwritten tick marks," or alternatively, offers to "provide identical copies of PX 115 . . . without the accounting tick marks."  ECF No. 201 at 13.  In order to allay defendant's concerns, the court directs plaintiffs to submit a clean copy of the first thirty-one pages of Plaintiffs' Exhibit 115 for inclusion in the record.

B.     Clay Channell's Testimony Regarding Cask Delivery Delays (Issue Number 2)

Mr. Clay Channell testified at trial about plaintiffs' decision to delay cask deliveries in 2012.  See ECF No. 163 at 161-65.  Plaintiffs' counsel asked Mr. Channell whether he was "part of the decision to delay delivery of the casks."  Id. at 162.  In response, Mr. Channell stated that he "was on distribution of emails from Randy Bunt at the time, where he was making that decision."  Id.  Defendant's counsel objected to Mr. Channell's testimony on the basis that "his knowledge is based on hearsay emails," that had not been introduced as exhibits.  Id.  The court did not rule on the objection, but allowed plaintiffs to proffer Mr. Channell's testimony.  On the revised chart of evidentiary issues, the parties have identified the following exchange as the proffered testimony:

Q.     Mr. Channell, my question was:  Do you have an understanding as to why the decision was made to delay deliver[y] of those casks in 2012 versus going ahead and accepting delivery of those casks and finding a place on site to store them?

4

> A.    Similar to the first time we had to undergo an adjustment on the delivery schedule, it was based on a financial resource issue.  I mean, we just—there's no need to spend money on canisters that you don't need right away.  If you project out your loadings and you have enough on site, it's better to—it was better to extend that and delay that capital expenditure.  In addition, we didn't have room for them. There's no reason to spend money on canisters you don't need and when you don't have room for them, so we made the decision to pay Holtec.  It seemed reasonable at the time to pay them storage fees and delay that delivery.

ECF No. 163 at 164-65.  See ECF No. 193-1 at 1 (revised chart of evidentiary issues identifying proffer).

According to plaintiffs, the email correspondence referenced by Mr. Channell is a business record kept in the ordinary course of plaintiffs' business.  See ECF No. 197 at 6. As such, plaintiffs argue that the emails themselves are admissible under the business record exception to the hearsay rule, FRE 803(6), and that the admissibility of the emails, in turn, makes Mr. Channell's testimony about their content admissible.  See id. at 6-8. In the alternative, plaintiffs urge the court to "admit the specific testimony identified by both parties as under proffer," because it "does not contain any hearsay."  ECF No. 201 at 14.  Plaintiffs argue that Mr. Channell "provided his answer based on his personal knowledge surrounding the decision at the time and provided by his role" with plaintiffs. Id.

Defendant contends that Mr. Channell's testimony about the cask delivery delay "was based entirely on emails from another employee of plaintiffs, Randy Bunt, who was the individual actually 'making that decision.'"  See ECF No. 199 at 19 (citing ECF No. 163 at 161-65).  Defendant insists that the court should not admit Mr. Channell's testimony because plaintiffs have not identified or authenticated the emails he referenced, and therefore cannot show that the emails are business records not subject to exclusion as hearsay.  See id. at 19-24.

The court agrees with plaintiffs that the specific portion of Mr. Channell's testimony proffered by plaintiffs following defendant's objection is permissible testimony based on the witness's personal knowledge.  The question from plaintiffs' counsel during the proffered testimony asked only for Mr. Channell's understanding of the delay decision—it did not ask about the content of any email correspondence from Mr. Bunt.  Under FRE 602, a lay witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony."  Mr. Channell testified at trial that he is "the dry storage program manager

for Southern Nuclear Company," plaintiffs' parent company.  ECF No. 163 at 9.  He explained that as program manager:

> I'm responsible for the overall dry cask storage program for the company. We . . . operate three nuclear facilities.  My responsibility involve[s] ensuring that we meet the 10 CFR 72 program requirements, that we purchase canisters, load canisters, and [are] able to maintain an adequate inventory in the spent fuel pools so that our plant can continue to operate and perform refueling outages.
>
> I'm responsible for ensuring that our—enough [Independent Spent Fuel Storage Installation (ISFSI)] pads are built, that the overall procurement strategy for canisters is met, again to meet this overall goal of making sure there's enough space in the pool to continue to operate.  Anything from the pool to the pad is my responsibility and my group's responsibility.

Id.

The court is satisfied that Mr. Channell's experience as plaintiffs' dry storage program manager gives him adequate personal knowledge to testify as to his understanding of decisions related to the procurement of storage casks.  The court will consider Mr. Channell's testimony along with all other evidence presented in resolving any factual disputes related to this issue.  Defendant's objection to the admission of this portion of Mr. Channell's testimony is overruled, and the testimony is admitted.

C.    Plaintiffs' Exhibit 138 (Issue Number 3)

Plaintiffs' Exhibit 138 is another composite exhibit, comprised of documentation offered to support plaintiffs' damages claim related to daily inspections of cask vents. See ECF No. 197 at 9.  Plaintiffs conduct daily vent inspections "to ensure proper airflow, and as a result sufficient cooling" of spent fuel stored on plaintiffs' ISFSI "[b]ecause of concerns over the accuracy of available temperature monitoring systems and maintenance costs."  Id. at 8.  An estimate for the labor costs associated with those inspections is required, however, because "vent inspections are only a part of what Plaintiffs' system operators do during outside rounds," and the vent inspection time is not separately logged or otherwise accounted for.  Id. at 8-9.  In order to arrive at that estimate, plaintiff asked their expert Mr. Metcalfe to make calculations "'based on number of personnel, the amount of time that it takes them to do their daily inspections, and the number of daily inspections that are required at each plant,' among other things." Id. at 9 (citing ECF No. 170 at 92 (Metcalfe)).

Plaintiffs' Exhibit 138 is 124 pages long.[4]  See ECF No. 193-2 at 124-248.  The first page of the exhibit reflects Mr. Metcalfe's calculations, and the remainder of the exhibit consists mainly of the documentation provided to Mr. Metcalfe for use in making those calculations.  See id.

Plaintiffs seek to admit Plaintiffs' Exhibit 138 as a collection of business records under FRE 803(6), which states:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . .
>
> (6) Records of a Regularly Conducted Activity.  A record of an act, event, condition, opinion, or diagnosis if:
>
> > (A)    the record was made at or near the time by—or from information transmitted by — someone with knowledge;
> >
> > (B)    the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> >
> > (C)    making the record was a regular practice of that activity;
> >
> > (D)    all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> >
> > (E)    the opponent does not show that the source of information  or the method or circumstances of preparation indicate a lack of trustworthiness.

FRE 803(6).  Plaintiffs also argue that the mathematical calculations performed by Mr. Metcalfe should be admitted pursuant to the residual exception to the hearsay rule, which states:

> (a)    In General.  Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:

---

[4]    Pages two, six, thirty-six, and fifty-six of the exhibit are blank sheets.  See ECF No. 193-2 at 125, 129, 158, and 179.

(1)     the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement; and

(2)     it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

(b)     Notice.  The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name—so that the party has a fair opportunity to meet it.  The notice must be provided in writing before the trial or hearing—or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice.

FRE 807.

Defendant contends, however, that the testimony elicited by plaintiffs' counsel is insufficient to support admission of the evidence because the documents do not qualify as business records under FRE 803(6), are not sufficiently trustworthy to satisfy FRE 807, are not the best evidence under FRE 1002, and should not be admitted as a duplicate under FRE 1003.  See ECF No. 199 at 12-19.  The court will address discrete sections of the exhibit, in turn.

1.     Page One Is Properly Considered a Demonstrative Exhibit

With regard to the first page of the exhibit, reflecting Mr. Metcalfe's calculations, plaintiffs assert that "[o]ther than the number of days per year, of which this Court may take judicial notice, each of the inputs for Plaintiff's vent inspection estimate were provided by Plaintiffs' witnesses during their trial testimony."  ECF No. 197 at 9.  Mr. Channell testified that it takes about forty-five minutes to perform each inspection.  See, e.g., ECF No. 163 at 186 (Channell).  He also testified as to the frequency of inspections at each plant.  He stated that Plant Hatch "does [vent inspections] once a day.  Farley and Vogtle do them twice a day."  Id. at 181-82.

Mr. Chalmer Myer, a project manager in plaintiffs' financial operations section, testified that he personally verified the accuracy of the rates reflected in pages three through five.  See ECF No. 169 at 212 (Myer) (confirming that he personally verified that the labor rates reflected in pages three through five of Plaintiffs' Exhibit 138, Bates numbers KGRSNC3-0028286 through 88, "were in place for those years as reflected in [plaintiffs'] business records").  And Mr. Channell testified that after the plaintiffs'

"financial services" department provided the rates to him, he provided the information to Mr. Metcalfe as "inputs" for his calculations.  See ECF No. 163 at 186-87, 195.

In the court's view, this testimony supports the numbers used in Mr. Metcalfe's calculations, the chart of which is properly viewed as a demonstrative exhibit to assist the court with the mathematical calculations necessary to determine the precise costs incurred for such inspection work.  Accordingly, the court will not admit Mr. Metcalfe's chart itself as evidence, but the chart will assist the court in organizing the testimony from Mr. Channell and Mr. Myer, along with any other relevant evidence in assessing damages in this case.

2.      Pages Three through Five Are Admissible

Pages three through five of Plaintiffs' Exhibit 138 identify mid-point labor rates for the inspection work, the accuracy of which are verified by the testimony of Mr. Myer. See ECF No. 193-2 at 126-28; ECF No. 169 at 212.  Mr. Channell testified that after plaintiffs' "financial services" department provided the charts to him, he provided the information to Mr. Metcalfe as "inputs" for the damages calculations.  See ECF No. 163 at 186-87, 195 (Channell).

Defendant contends that Plaintiffs' Exhibit 138 constitutes hearsay, and is not admissible under the business records exception.  See ECF No. 199 at 12-15. Defendant's argument as it relates specifically to pages three through five of the exhibit, however, is not a model of clarity.[5]  See id. at 14.  It appears to the court that defendant may mean to argue that, with regard to those pages, plaintiffs have failed to "elicit testimony as to whether 'the record was made at or near the time by—or from information transmitted by—someone with knowledge.'"  Id. (quoting FRE 803(6)(A)).

The court disagrees.  While plaintiffs' primary business involves operating nuclear power plants, as a secondary matter, defendant has forced plaintiffs into the business of continuous litigation as a result of defendant's continuing breach.  The present litigation is the third round of litigation related to defendant's breach of plaintiffs' Standard Contracts, a cycle that will repeat until defendant either performs or decides it never will. See also Alabama Power Co. v. United States, 119 Fed. Cl. 615, 618 (2014) (second round of litigation related to the breach of plaintiffs' Standard Contracts); S. Nuclear Operating Co. v. United States, 77 Fed. Cl. 396 (2007), aff'd in part, vacated in part, 637

---

[5]      The court notes that the structure of defendant's response brief proved challenging in discerning certain of defendant's arguments.  This is particularly true with regard to the section that blends defendant's analysis of Plaintiffs' Exhibit 115, Plaintiffs' Exhibit 138, Clay Channell's testimony about Plaintiffs' Exhibit 138, Chalmer Myer's testimony about Plaintiffs' Exhibit 138, and Kenneth Metcalfe's testimony about Plaintiffs' Exhibit 138.  The court has, nevertheless, endeavored to sort the strands of analysis for separate consideration.

F.3d 1297 (Fed. Cir. 2011) (first round of litigation related to defendant's breach of plaintiffs' Standard Contracts).

In the context of managing continuous litigation, pages three through five satisfy the requirements of FRE 803(6)(A). The charts were created by plaintiffs' financial services personnel in order to assist in the effort to quantify damages in this case. The court concludes that the record was made sufficiently close in time to the litigation to ensure its reliability, and that the financial services department staff's work, verified by Mr. Myer, satisfies the knowledge requirement. Accordingly, these pages qualify as business records, and the court will not exclude them as hearsay.

Pages three through five of Plaintiffs' Exhibit 138 are also admissible under FRE 807. First, the statements in these pages are supported by sufficient guarantees of trustworthiness, considering the totality of the circumstances. See FRE 807(a)(1). Mr. Channell testified, under oath, that the documents were prepared by plaintiffs' financial services department staff. See ECF No. 163 at 186-87, 195-96 (Channell). And Mr. Myer testified, under oath, that he personally verified the information included in each of the charts. See ECF No. 193-2 at 126-28 (charts); ECF No. 169 at 212 (Myer).

In addition, the charts are more probative of the applicable labor rates than any other evidence that plaintiffs could apparently obtain. See FRE 807(a)(2). Defendant's breach has created the need for plaintiffs to document these labor rates. As such, working with the financial services staff to collect the relevant data, and organizing that data in chart form is, in the court's view, a sensible and reliable way to do so.

And finally, the court finds that defendant had adequate notice that plaintiffs intended to submit pages three through five at trial. Plaintiffs' Exhibit 138—including pages three through five—was itemized on three pre-trial exhibit lists filed by plaintiffs, the first of which was filed on October 26, 2019. See ECF No. 114 (plaintiffs' initial exhibit list); ECF No. 123 (plaintiffs' first amended exhibit list); ECF No. 134 (plaintiffs' second amended exhibit list). In response to plaintiffs' final exhibit list, defendant filed objections to many of the exhibits, including Plaintiffs' Exhibit 138. See ECF No. 136 at 15 (objecting to Plaintiffs' Exhibit 138 on the basis of "Relevance (FRE 402), Hearsay (FRE 801), [and the] Best Evidence Rule (FRE 1003)"). The fact that defendant made substantive objections to Plaintiffs' Exhibit 138 is evidence that defendant had access to, and actually reviewed, the exhibit. Thus, plaintiffs have satisfied the notice requirement in FRE 807(b). Pages three through five of Plaintiff's Exhibit 138 are admitted.

3.    Pages 7 through 86 Are Admissible, in Part

Pages seven through eighty-six include: (1) a document titled "Spent Fuel Storage Cask Heat Removal System Monitoring" for Plant Farley, ECF No. 193-2 at 130-57; (2) outside rounds procedures for Plant Hatch, see id. at 159-78; and (3) outside area rounds

10

sheets for Plant Vogtle, see id. at 180-209.  According to plaintiffs, Mr. Channell supplied the necessary testimony at trial to demonstrate that these documents are business records.  See ECF No. 197 at 12.  In support, plaintiffs cite to the following testimony:

> Q.    The remaining pages of this exhibit, beginning with AM120, and going through the end of the document, AM196, is that one record, one document?
>
> A.    (Document review.)  Forgive me.  I just want to be sure.  The beginning of this document says, Page 1 of 28.  I'm going through that now.  This looks—this appears to be the rounds procedure that Farley uses.
>
> Q.    And that was my next question, Mr. Channell.  Could you identify this document for the Court.
>
> A.    Yes.  This is what Farley uses to perform rounds at the ISFSI.
>
> Q.    All right.  And is this a document that is generated, kept and maintained by Southern in its business records in the normal course of business?
>
> A.    Yes, it is.

ECF No. 163 at 188-89 (Channell).

The court agrees with plaintiff with respect to the Plant Farley procedures, but finds that plaintiffs failed to specifically address the Plant Hatch and Plant Vogtle procedures in the portions of testimony cited in their briefs.  Accordingly, the court admits pages seven through thirty-five into evidence, but excludes pages thirty-six through eighty-six.

### 4.    Pages 87 through 125 Are Excluded

In their initial brief, plaintiffs argue that Plaintiffs' Exhibit 138 "should be admitted in its entirety" as business records pursuant to FRE 803(6).  ECF No. 197 at 11.  In their reply, however, plaintiffs note that they seek admission of only the first eighty-six pages of the exhibit, and state that they "did not need to introduce pages 87 through 125."  ECF No. 201 at 9.  "Those pages were inadvertently included within PX 138 . . . and the Court may strike or exclude those pages from the record."  Id.

Given plaintiffs' statement in their reply that that they "did not need to introduce pages 87 through 125," and their representation that the court "may strike or exclude those pages from the record," the court excludes those pages.

### 5.    Handwritten Marks on Plaintiffs' Exhibit 138

Finally, defendant argues that Plaintiffs' Exhibit 138 should be excluded because it violates the best evidence rule. Specifically, defendant contends that the exhibit includes handwriting "that was never attributed to a specific individual." ECF No. 199 at 17. While plaintiffs insist that the handwriting has no substantive meaning and thus does not violate the best evidence rule, they also state that they would have "no objection if the Court were to affirmatively 'strike' the handwritten tick marks," or alternatively, offers to "provide identical copies of . . . PX 138 . . . without the accounting tick marks." ECF No. 201 at 13. In order to allay defendant's concerns, the court directs plaintiffs to file a clean copy of the portions of Plaintiffs' Exhibit 138 that the court has concluded are admissible.

      D.      Additional Testimony Regarding Plaintiffs' Exhibit 138 (Issue Numbers 4, 5, and 6)

On the chart of evidentiary issues submitted by the parties, item numbers four, five, and six, pertain to sections of testimony offered by Mr. Channell, Mr. Myer, and Mr. Metcalfe. See ECF No. 193-1 at 1. In the chart, the parties note that the admissibility of each section of testimony is "based on admission of PX 138." Id. The parties, however, did not make separate arguments about this testimony or specifically how it relates to Plaintiffs' Exhibit 138. Because the court admits only part of Plaintiffs' Exhibit 138, the lack of specific arguments from the parties prevents the court from ruling on the admissibility of the identified testimony at this time. Accordingly, the court directs the parties to confer and file a notice addressing the effect of this ruling on the admissibility of the identified sections of testimony.

      E.      Cale Martin's Testimony (Issue Number 7)

Plaintiffs seek to recover $143,189 for the cost of vent inspections performed at Plants Farley, Hatch, and Vogtle during the claims period. See ECF No. 197 at 14. Plaintiffs based this demand on information provided by systems operators who stated that each vent inspection took forty-five minutes. Id. After defendant challenged the forty-five minute estimate, plaintiffs directed Mr. Cale Martin, Project Cost Analyst Lead for plaintiffs, to personally observe the inspection process in an attempt to verify the estimate. See id. at 15 (citing ECF No. 163 at 265 (Martin)). Plaintiffs argue that "[p]ersonal observation was the only way to re-verify the reliability of the estimate since the system operators that perform the daily vent inspections at each plant do not separately account for the portion of their outside rounds associated with vent inspections and did not do so during the claim period." Id. (citing ECF No. 163 at 183 (Channell)). Mr. Martin then testified in detail at trial about the vent inspection process and related activity. See ECF No. 163 at 265-96; ECF No. 164 at 15-80 (Martin).

Defendant objects to the admission of Mr. Martin's testimony on the basis that Mr. Martin was not employed by plaintiffs during the claim period, and therefore, he could not provide "any testimony that is relevant to the issues of this case," and that any knowledge Mr. Martin "might have would necessarily be based on impermissible hearsay or would otherwise be impermissible lay opinion testimony." ECF No. 163 at 258-59 (Martin). Defendant criticizes the damages alleged by plaintiff for vent inspections as "based on unsubstantiated 'estimates' developed long after the fact." ECF No. 199 at 25. According to defendant, "[p]laintiffs are relying on those estimates because of their failure to track or maintain records of the time actually spent conducting vent inspections during the claim period." Id.

Relevant evidence is evidence having "any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FRE 401. This standard for relevance is a "liberal one." Yankee Atomic Elec. Co., No. 98-126C, 2004 WL 1535686, at *2 (Fed. Cl. Jun. 28, 2004) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 587 (1993)). And under FRE 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

In this case, Mr. Martin testified about the vent inspection process based on his personal observations made in 2018. See ECF No. 163 at 271 (stating that the inspection at Plant Hatch was conducted on July 11, 2018), 275 (stating that the inspection at Plant Vogtle was conducted on July 12, 2018), 276 (stating that the inspection at Plant Farley was conducted on September 7, 2018). According to defendant, Mr. Martin's testimony is irrelevant and inadmissible for three reasons: (1) Mr. Martin testified about observations or research that were not conducted during the claims period at issue here; (2) Mr. Martin failed to account for the differences in procedures and the number of casks at each plant in drawing his conclusions; and (3) Mr. Martin's conclusion, about which he testified, included a "mix of observations and 'guesses.'" Id. at 25-26. Plaintiffs urge the court to consider these aspects of Mr. Martin's testimony in weighing the evidence, but not to exclude the evidence. See ECF No. 201 at 15.

The court agrees with plaintiffs. Mr. Martin's testimony is relevant because it tends to support plaintiffs' estimate for the duration of vent inspections, a fact that is certainly of consequence in this case. The court will, however, also consider the limitations of that evidence given the removal in time from the claims period, and weigh the evidence accordingly. In addition, Mr. Martin's personal knowledge of his observations qualifies him to testify about both those observations and his lay opinions based thereon. See FRE 701 (stating that a lay witness may offer an opinion so long as the opinion is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of [expert testimony]").

13

For these reasons, defendant's objection is overruled, and the court admits Mr. Martin's testimony regarding vent inspections.

F.     Plaintiffs' Exhibits 141, 142, 143, 144, and 145 (Issue Numbers 8, 9, 10, 11, and 12)

1.     Plaintiffs' Exhibits 141, 143, and 144 Are Admitted

At trial, the court admitted Plaintiffs' Exhibits 141, 143, and 144, which contain Mr. Martin's handwritten notes about vent inspections, subject to the admission of Mr. Martin's testimony.  See ECF No. 163 at 276-77 (Martin) (Plaintiffs' Exhibit 141); id. at 271-72 (Martin) (Plaintiffs' Exhibit 143); id. at 275 (Martin) (Plaintiffs' Exhibit 144). Because the court has admitted Mr. Martin's testimony, Plaintiffs' Exhibits 141, 143, and 144 are also admitted.

2.     Plaintiffs' Exhibit 142 Is Properly Considered a Demonstrative Exhibit

Plaintiffs' Exhibit 142 is a spreadsheet reflecting cost estimates for vent inspections created by Mr. Martin based on the duration of vent inspections that he "recorded from his own perception of the vent inspection processes at Plants Farley, Hatch, and Vogtle."  ECF No. 197 at 22.  To create the spreadsheet, Mr. Martin "inputted those [time] increments into an Excel spreadsheet and utilized a calculation in the program to determine the costs that would be associated with those activities at each plant."  Id. (citing ECF No. 164 at 37 (Martin)).  The information included in the spreadsheet in addition to the duration of vent inspections "are all facts that Mr. Martin is familiar with and had access to in his role [as plaintiffs'] Project Cost Analyst Lead."  Id.

Defendant objects to admission of the exhibit as hearsay and as improper lay opinion testimony.  See ECF No. 199 at 32 (citing ECF No. 164 at 32-33 (Martin)). Plaintiffs argue that the exhibit is not hearsay because they are not offering the exhibit for the truth of the matters asserted therein; rather, they are offering the exhibit to demonstrate that the costs claimed as damages in this case are reasonable.  See ECF No. 197 at 21.  Plaintiffs also claim that the exhibit is not improper lay opinion testimony because it is based on Mr. Martin's personal observations, and information he had access to in his role as Project Costs Analyst Lead for plaintiffs.  Id. at 22.  In the alternative, plaintiffs ask that if the court does not admit the document into evidence, that it admit the exhibit as a demonstrative "to illustrate the outcomes of Mr. Martin's actual observations of the vent inspection processes at Plants Farley, Hatch, and Vogtle."  ECF No. 201 at 24.

As it did with Mr. Metcalfe's calculations on the first page of Plaintiffs' Exhibit 138, the court finds that this document is most properly used as a demonstrative exhibit.

Plaintiffs identify various sections of trial testimony from Mr. Channell and Mr. Myer that allegedly support the numbers in the spreadsheet for frequency of inspections and applicable labor rates.  See ECF No. 201 at 22.  This spreadsheet may be used by plaintiffs to organize the testimony and assist the court with the mathematical calculations at issue.  Accordingly, Plaintiffs' Exhibit 142 will not come into evidence, but may be referenced by the parties as a demonstrative exhibit.

   3. Plaintiffs' Exhibit 145 Is Admitted As a Business Record

  Plaintiffs' Exhibit 145 is a typed compilation of the handwritten notes Mr. Martin made during the vent inspections he observed.  See ECF No. 163 at 277-78 (Martin). Defendant objects to the admission of this exhibit on the basis that it constitutes hearsay and does not fall within a recognized exception.  See ECF No. 199 at 30.  In particular, defendant argues that the exhibit cannot be admitted as a present sense impression under FRE 803(1) because Mr. Martin did not type the notes immediately after making his observations.  See id.  Defendant also argues that the exhibit cannot be admitted as a business record under FRE 803(6) because:

> (1) Mr. Martin prepared PX 145 not "in the course of a regularly conducted activity of a business," but rather solely as a litigation document to be used in this case; and (2) it was not plaintiffs' "regular practice" to keep records of its vent inspection activities, which necessitated plaintiffs' need to create this document in the first place for use in this litigation, in lieu of actual contemporaneous records.

ECF No. 199 at 31.  Plaintiffs ask the court to admit the records under FRE 807, the residual hearsay exception.  See ECF No. 201 at 20.

  As the court indicated with respect to records of the labor rates for vent inspections, defendant's continuing breach of contract has forced plaintiffs into the secondary business of continuous litigation.  See supra, Sec. I.C.2.  Thus, viewing Plaintiffs' Exhibit 145 as a record created in the course of plaintiffs' business of litigating the damages caused by defendant's breach—records that plaintiffs now must make a regular practice of keeping—the court concludes that the exhibit qualifies for admission under the business records exception to the prohibition against hearsay, FRE 803(6).  The court admits Plaintiffs' Exhibit 145 and will not strike Mr. Martin's testimony related thereto.

  In addition, this document is admissible under FRE 807.  Mr. Martin's typed notes are "supported by sufficient guarantees of trustworthiness," namely Mr. Martin's corroborating testimony, under oath, that Plaintiffs' Exhibit 145 accurately reflects his observations of the vent inspection process.  FRE 807(a)(1); see also ECF No. 163 at 277-78 (Martin).  The court also finds that this evidence is "more probative on the point

15

for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  FRE 807(a)(2).  As the court noted above, plaintiffs argue that "[p]ersonal observation was the only way to re-verify the reliability of the estimate since the system operators that perform the daily vent inspections at each plant do not separately account for the portion of their outside rounds associated with vent inspections and did not do so during the claim period."  ECF No. 197 at 15 (citing ECF No. 163 at 183 (Channell)).  And Mr. Martin testified that he translated his handwritten notes of his observations into the typed notes that comprise Plaintiffs' Exhibit 145 so that he could include "additional information about his visits . . . that he was not able to include in his handwritten notes while at the plants."  ECF No. 201 at 20 (citing ECF No. 163 at 279) (Martin)).  The court is unaware of any other, more probative evidence of the vent inspection observations not expressly included in Mr. Martin's handwritten notes that was available to plaintiffs.

And finally, the court finds that defendant had adequate notice that plaintiffs intended to submit this exhibit at trial.  Plaintiffs' Exhibit 145 was included on three pre-trial exhibit lists filed by plaintiffs, the first of which was filed on October 26, 2019.  See ECF No. 114 (plaintiffs' initial exhibit list); ECF No. 123 (plaintiffs' first amended exhibit list); ECF No. 134 (plaintiffs' second amended exhibit list).  In response to plaintiffs' final exhibit list, defendant filed objections to many of the exhibits, including Plaintiffs' Exhibit 145.  See ECF No. 136 at 16 (objecting to Plaintiffs' Exhibit 145 on the basis of "Relevance (FRE 402) [and] Hearsay (FRE 801)").  The fact that defendant made substantive objections to Plaintiffs' Exhibit 145 is evidence that defendant had access to, and actually reviewed, the exhibit.  Thus, plaintiffs have satisfied the notice requirement in FRE 807(b).

G.    Plaintiffs' Exhibit 139 (Issue Number 13)

Plaintiffs' Exhibit 139 is a compilation of documents related to repairs to the cask crane at Plant Vogtle.  See ECF No. 193-2 at 305-399.  Defendant objects to the admission of the document as hearsay.  See ECF No. 199 at 34.  At trial, plaintiffs argued that the exhibit should be admitted as a business record.  See ECF No. 169 at 167 (Myer) ("I think Mr. Myer has testified very directly that this is a business record."); id. at 168 (Myer) ("And so I would submit that this is certainly a business record that is admissible under Rule 803(6).").  The objection to the admissibility of this exhibit is listed as "maintained" on the chart of evidentiary issues that the parties jointly submitted to the court for resolution.  See ECF No. 193-1 at 2.

For a reason plaintiffs do not explain, they omit any substantive discussion about the admissibility of Plaintiffs' Exhibit 139 in their briefs now before the court.  See generally, ECF No. 197; ECF No. 201.  Plaintiffs instead acknowledge that the court may exclude the exhibit, and argue that it should "at the very least" admit the exhibit as a demonstrative.  ECF No. 197 at 27; ECF No. 201 at 27.  Under the terms of the rule, a

16

"custodian or another qualified witness" must testify to the requirements of FRE 803(6). See FRE 803(6)(D). Plaintiffs have not presented an argument that the requirements of the rule have been met, and the court will not supply that argument on plaintiffs' behalf. Accordingly, the court sustains defendant's objection, and Plaintiffs' Exhibit 139 is excluded from the evidence in this case.

Plaintiffs then ask that, if the court does not admit the exhibit into evidence, that the court admit the exhibit as a demonstrative. The exhibit is nearly 100 pages in length, with no obvious organization. See ECF No. 193-2 at 305-399. This presentation does not assist the court in understanding or organizing the relevant trial testimony, and does not serve as an illustration or summary of the voluminous information. As such, the court does not consider Plaintiffs' Exhibit 139 as a demonstrative exhibit.

> H.   Additional Testimony Regarding Plaintiffs' Exhibit 139 (Issue Number 14, 15, and 16)

The court must also exclude the testimony based on Plaintiffs' Exhibit 139. A review of the trial transcript makes clear that the testimony based on Plaintiffs' Exhibit 139 was made as a proffer contingent on the admission of the exhibit itself. During Mr. Jimmy Cash's testimony, counsel engaged in a lengthy discussion about the admissibility of Plaintiffs' Exhibit 139. See ECF No. 165 at 125-27. During that exchange, plaintiffs' counsel made clear that the admission of Mr. Cash's testimony about the exhibit was dependent on admission of the exhibit itself. He stated:

> Perhaps the Court could conditionally accept [Plaintiffs' Exhibit 139], pending briefing, and I will not spend much time on the document, other than to make sure that what we want to highlight for the Court in that document is testified to so we have that offer of proof.

Id. at 127. He also stated:

> I was going to go into the details of this document, only if admitted, and since it's not admitted, I was going to offer it to be conditionally admitted and then make my offer of proof on what he sees in this document that would be consistent with those elements of a repair estimate, but I just didn't want to go into the contents until and unless we addressed admission. But with an offer of proof, I can put on the record for the Court, when you make a ruling on this, after briefing, go ahead and get into the contents.

Id. at 129. And just before proceeding with Mr. Cash's testimony, counsel noted for the record that "it is a conditional offer of proof." Id. at 130.

Plaintiffs again sought to admit Plaintiffs' Exhibit 139 during the direct examination of Mr. Myer.  See ECF No. 169 at 156.  Defendant again objected, and counsel proceeded to voir dire Mr. Myer about the document.  See id. at 156-165.  At the end of the voir dire, defendant repeated its objection to admitting the document into evidence.  See id. at 166.  Following an extended discussion about the basis for admitting the document, and just before proceeding with Mr. Myers' testimony, defendant's counsel clarified the admission status of the forthcoming testimony:

> MR. MCADAMS:  Since the exhibit remains only conditionally admitted, it's the Government's understanding then that moving forward testimony with respect to the document will be in the form of a proffer.

> THE COURT:          Correct.

See id. at 172.

And finally, plaintiffs elicited testimony about Plaintiffs' Exhibit 139 on cross-examination of defendant's crane expert, Mr. Neil Skogland.  See ECF No. 171 at 144-47.  When plaintiffs' counsel directed Mr. Skogland's attention to Plaintiffs' Exhibit 139, defendant's counsel interjected:

> MR. KUSHNIR:     Your Honor, if I may, before we get into Plaintiff[s'] Exhibit 139, I did want to note again that this document was only conditionally admitted into the record.  So any questions about this document should be under a proffer.

> MS. BELL:   Your Honor, I'm happy to do that.  Opposing counsel did state, and I believe Mr. Skogland has said that he reviewed this document, reviewed the cost estimate and including some of the repair methods offered. So I would just state that for the Court that, of course, we know under 703 that experts are allowed to look at documents even if they are not admissible.

> THE COURT:       Understood.  And given the conditional admission, we will begin with that proffer here.  Thank you.

Id. at 144.

In all three instances, the transcript clearly indicates that the challenged testimony was made in the form of proffers, conditioned on the admission of the underlying document.  Because the court has excluded Plaintiffs' Exhibit 139, it must do the same

with regard to the conditional testimony from Mr. Cash, Mr. Myer, and Mr. Skogland.[6] Thus, the court excludes the testimony offered by Mr. Jimmy Cash, Mr. Chalmer Myer, and Mr. Neil Skogland related to Plaintiffs' Exhibit 139.

  I.  Defendant's Exhibits 172A, 173A, 174A, 175A (Issue Number 17)

  At trial, defendant introduced into evidence portions of Rule 30(b)(6) deposition testimony taken from plaintiffs' corporate designees John Williams, Clay Channell, Sarah Adams, and Anita Allcorn-Walker.[7] See ECF No. 174 at 242. Plaintiffs did not object to the admission of this deposition testimony, but sought to counter-designate related testimony from each deposition. See id. at 243-44. Defendant objects to the admission of the counter-designations. See ECF No. 175 at 7-8.

  According to plaintiffs, they are entitled to counter-designate deposition testimony for Mr. Williams, Mr. Channell, Ms. Adams, and Ms. Allcorn-Walker, pursuant to both Federal Rule of Civil Procedure (FRCP) 32(a)(6) and FRE 106. See ECF No. 197 at 28-29. Under both FRCP 32(a)(6), which is identical to RCFC 32(a)(6), "[i]f a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts."[8]

---

[6] In a footnote in their reply, plaintiffs argue that Mr. Skogland's testimony about Plaintiffs' Exhibit 139 should be admitted because defendant failed to articulate a basis for excluding the testimony, and because the testimony relates to repair costs, a topic covered in Mr. Skogland's direct examination. See ECF No. 201 at 27 n.4. The court disagrees. Although defendant does not provide a detailed analysis of this issue focused specifically on Mr. Skogland's testimony, it argues that Mr. Myer's testimony related to Plaintiffs' Exhibit 139 should be excluded because it is based on an inadmissible document, and asks the court to exclude Mr. Skogland's testimony for the same reason. See ECF No. 199 at 35-36. To the extent that plaintiffs mean to indicate that part of Mr. Skogland's direct testimony should be excluded if Plaintiffs' Exhibit 139 is excluded, the court declines to make such a ruling because the testimony was not identified as an issue on the numbered list of outstanding evidentiary issues that was jointly submitted by the parties. See ECF No. 193-1; see also ECF No. 192 (order informing the parties that "the court will only rule on the admission of evidence that appears in the numbered list").

[7] Defendant's Exhibits 172, 173, 174, and 175 include only defendant's designations, while Defendant's Exhibits 172A, 173A, 174A, and 175A include both defendant's designations and plaintiffs' counter-designations. By agreement of the parties, only one set of exhibits will be admitted into the trial record. See ECF No. 193-1 at 3.

[8] "Because the court['s] rules are modeled on the Federal Rules of Civil Procedure, the court considers case law interpreting the correlative rules." See DNC Parks & Resorts at Yosemite, Inc. v. United States, 127 Fed. Cl. 435, 438 (2016); see also 2002 Rules Committee Note, Rules of the United States Court of Federal Claims at i (stating that "interpretation of the

Defendant opposes the counter-designations for two reasons: (1) defendant contends that deposition testimony is hearsay, and that plaintiffs have failed to identify an exception to the prohibition against hearsay that would allow admission, see ECF No. 199 at 37-38; and (2) defendant argues that the counter-designations identified by plaintiffs are overly-broad, see id. at 38-39.

The court disagrees with defendant on both points. In the court's view, defendant misreads the applicable rules in arguing that plaintiffs are required to present a substantive basis for admission of counter-designations separate and apart from RCFC 32(a)(6). As an initial matter, the text of the rule includes no such limitation, see RCFC 32(a)(6); and defendant offers no support for why the court should import one, see ECF No. 199 at 37-39.[9] The court did not find, and the parties did not present, any binding authority on this issue from the United States Court of Appeals for the Federal Circuit or from the Supreme Court of the United States. As such, beyond a plain reading of the text for RCFC 32(a)(6), the court looks to persuasive authority from other circuits. In Nationwide Life Insurance Co. v. Richards, the United States Court of Appeals for the Ninth Circuit included the following analysis:

> Under Rule 802, hearsay is admissible where allowed by the Federal Rules of Evidence, or "by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed. R. Evid. 802. Rule 32(a)(4)(B) is one of these "other rules." See Fed. R. Evid. 802 advisory committee's note (identifying Rule 32 as one of the "other rules"); Fed. R. Civ. P. 32 advisory committee's note (explaining that new Rule 32(a) was intended to "eliminate[ ] the possibility of certain technical hearsay objections which are based, not on the contents of deponent's testimony, but on his absence from court"). Our sister circuits have recognized that Rule 32(a) is an independent exception to the hearsay rule. See Ueland v. United States, 291 F.3d 993, 996 (7th Cir. 2002) ("Rule 32(a), as a freestanding exception to the hearsay rule, is one of the 'other rules' to which Fed. R. Evid. 802 refers. Evidence authorized by Rule 32(a) cannot be excluded as hearsay, unless it would be inadmissible even if delivered in court."); Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 962-63 (10th Cir. 1993) ("Deposition testimony is normally inadmissible hearsay, but Fed. R. Civ. P. 32(a) creates an exception to the hearsay rules."); S. Indiana Broadcasting,

---

court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure").

[9] Defendant cites to three cases discussing FRE 106, none of which address counter-designations of deposition testimony or FRCP 32(a)(6) or RCFC 32(a)(6). See ECF No. 199 at 38.

Ltd. v. FCC, 935 F.2d 1340, 1341-42 (D.C. Cir. 1991) (recognizing that Fed.
R. Civ. P. 32(a) creates an exception to the hearsay rule); United States v.
Vespe, 868 F.2d 1328, 1339 (3d Cir. 1989) (Rule 32(a)(3)(B) "constitutes an
independent exception to the hearsay rule"); Carey v. Bahama Cruise Lines,
864 F.2d 201, 204 & n.2 (1st Cir. 1988) (explaining that Rule 32(a)(3)(B) "is
more permissive than Federal Rule of Evidence 804(a)(5)").

Nationwide Life Ins. Co. v. Richards, 541 F.3d 903, 914-15 (9th Cir. 2008).  The court
finds this reasoning persuasive, and will not require plaintiffs to demonstrate an
independent basis, beyond RCFC 32(a)(6), for the admission of their counter-
designations.

The court also disagrees that plaintiffs' counter-designations "go well beyond the
testimony used by the [defendant]."  ECF No. 199 at 39.  The court has reviewed the
designations as reflected in the highlighted copy of depositions submitted as part of the
parties' appendix of evidence.  See ECF No. 193-2 at 420-942.  Plaintiffs' counter-
designations are not extensive and appear to be coordinated with sections of testimony
designated by defendant.  See id.

Accordingly, the court overrules defendant's objection and admits the counter-
designations for the limited purpose allowed by RCFC 32(a)(6)—to ensure that
defendant's designations are presented fairly.  Defendant's Exhibits 172A, 173A, 174A,
and 175A are admitted, and Defendant's Exhibits 172, 173, 174, and 175 are excluded.

> J.     Kenneth Metcalfe's Testimony Regarding Commingling of Operations and
>        Maintenance and Capital (Issue Number 18)

During his rebuttal testimony, plaintiffs' expert, Mr. Metcalfe, testified about the
propriety of commingling capital funds with operations and maintenance (O&M) funds in
response to a cost allocation theory offered by defendant's expert, Mr. Larry Johnson.
The testimony at issue reads as follows:

Q.     Again, you were here for Mr. Johnson's testimony yesterday?

A.     Yes, I was.

Q.     Did you hear Mr. Johnson discuss at all the mixing of capital accounts
       and O&M accounts for labor?

A.     By the amounts of dollars he mixed, yes.

Q.     All right, sir.  And do you have an opinion about that mix?

21

A.     Yes.

Q.     What is that opinion?

A.     Basic regulatory accounting 101, you do not mix capital and O&M
       accounts or capital accounts amongst each other.   They are
       independent entities.   This was brought up—or at least good
       reasonings for it were brought up by Mr. Cain yesterday as we were
       looking at his—in one of his slides at a particular capital work order
       coming in on October 5th of some year, because a capital work
       order—once the asset that it represents, it becomes used and useful, it
       goes into plant and service, at its full accounting cost at that time, all
       allocations are done once that occurs.

ECF No. 175 at 223-24 (Metcalfe).

Defendant argues that Mr. Metcalfe's opinion on the importance of separating
capital and O&M funds should be excluded because plaintiffs had not previously
disclosed the opinion, in violation of RCFC 26(a)(2)(B)(i)-(ii) and RCFC 37(c)(1).  See
ECF No. 199 at 41.  Rule 26(a)(2)(B) identifies the expert witnesses who are required to
provide a written report and outlines the required contents of such reports.  Rule 37(c)(1),
in turn, states:  "If a party fails to provide information or identify a witness as required by
RCFC 26(a) . . . , the party is not allowed to use that information or witness to supply
evidence . . . at a trial, unless the failure was substantially justified or is harmless."

Under the plain reading of RCFC 37(c), before the court levies the sanction of
excluding plaintiffs' expert's testimony, it must be established that plaintiffs have failed
to comply with RCFC 26(a).  Although the rule does not explicitly indicate which party
must demonstrate such a failure, by force of logic, the burden must fall on defendant.
See Romero v. ITW Food Equip. Grp., LLC, 289 F.R.D. 387, 388 (D.D.C. 2013)
(holding that under Federal Rule of Civil Procedure 37(c) "the initial burden is on the
movant to show that the expert opinion was undisclosed").

Here, defendant has failed to carry that burden.  When defendant objected to Mr.
Metcalfe's testimony at trial, the parties discussed specific references to Mr. Metcalfe's
deposition transcript and the work papers accompanying his expert report as potential
sources of his originally disclosed opinion.  See ECF No. 175 at 211-22.  Despite those
discussions, however, neither party has submitted that evidence for the court's
consideration in resolving the factual dispute as to whether Mr. Metcalfe's opinion was,
in fact, previously undisclosed.  The parties have offered only opposing argument in their
briefs that are now before the court.  See ECF No. 197 at 29 (plaintiffs arguing that Mr.
Metcalfe's "expert report addressed separation of capital and O&M in the work papers
identified as integral to that report"); ECF No. 199 at 42 (defendant arguing that it

22

"learned of this opinion for the first time in the middle of trial, just days before Mr. Metcalfe was to testify, and were forced to respond without the benefit of exploring the basis for this opinion in discovery"); ECF No. 201 at 33 (plaintiffs arguing that "Mr. Metcalfe testified that this topic was covered in his workpapers that were part of his report"). Without this evidence, the court cannot determine whether Mr. Metcalfe's opinion about commingling of O&M and capital funds was a violation of RCFC 26(a). Accordingly, because defendant had the burden to prove the violation, its objection must be overruled and Mr. Metcalfe's testimony regarding commingling of O&M and capital is admitted.

II.     Evidence for which Defendant Is the Proponent

Defendant seeks admission of two exhibits to which plaintiffs object:  (1) Defendant's Exhibit 26, "a summary report from Westinghouse Fuel Services and Technology Operations regarding in-can sipping and bulge joint inspections" at Plant Farley, ECF No. 196 at 2; and (2) Defendant's Exhibit 27, "a January 22, 2007 operational experience (OE) report by the Institute of Nuclear Power Operations (INPO) regarding the Nozzleless Handling Tool (NHT)," id. at 3.  The court will address each exhibit in turn.[10]

A.     Defendant's Exhibit 26 (Issue Number 21)

1.     Plaintiffs Have Not Waived Their Objection

As an initial matter, defendant argues that plaintiffs waived any objection they might have to Defendant's Exhibit 26 because the objection was not identified on the parties' pre-trial submissions.  See ECF No 196 at 5-7; ECF No. 200 at 2-4.  To support this assertion, defendant cites to the court's July 25, 2019 order directing that, "'[i]f applicable, on or before January 13, 2020, the parties shall also separately **FILE** a final list of exhibits and witnesses to which there are objections and the bases of those objections, keyed to the applicable Federal Rules of Evidence.'"  ECF No. 196 at 5 (quoting ECF No. 101 at 4).

The court did, in fact, direct the parties to file a list of unresolved objections prior to trial, and plaintiffs did not do so.  See ECF No. 101 (pretrial order).  The court, however, declines to impose the heavy penalty of disallowing all objections on this basis

---

[10]     A review of the trial transcript suggests that the court admitted Defendant's Exhibit 26 and Defendant's Exhibit 27 at trial, despite the court reporter's notes that the exhibits were conditionally admitted.  See ECF No. 170 at 186; id. at 196.  However, because the parties have included the exhibits on their jointly produced chart of evidentiary issues, ECF No. 193-1 at 2-3, and have presented arguments thereon, the court will consider the arguments now before the court as arguments for reconsideration of its initial ruling at trial.

for two reasons.  First, the order in which the court directed such a filing did not clearly indicate that plaintiffs' failure to file a list of objections would result in an automatic bar against plaintiffs' ability to make any objections at trial, nor was that the spirit in which the court issued its order.  See generally id.  The purpose of the requirement was to assist the court in preparing for trial; it did not confer a right on defendant to such information.  The fact that plaintiffs failed to file a list of objections prior to trial impeded the court's preparation, but did not ultimately impair its ability to conduct the trial.

Moreover, in directing the parties to file objections, the court was well aware that the manner in which evidence is ultimately presented at trial could logically—and potentially dramatically—change the existence and nature of those objections.  Defendant's exhibit list did not indicate which of its witnesses would lay the foundation for Defendant's Exhibit 26, and even if it had, the sufficiency of such a predicate showing relies on counsel's execution at the time the court receives the testimony.  See ECF No. 129 at 6 (defendant's exhibit list).  The court will not penalize plaintiffs' counsel for failing to predict that defendant's counsel would offer the exhibit through the testimony of Mr. Richard Loftin, or failing to foretell the sufficiency of that testimony to support admission.

As such, plaintiffs' failure to file a list of objections to defendant's exhibits and witnesses prior to trial, although unhelpful, does not deserve the draconian penalty of the court automatically barring plaintiffs from making any objections.

## 2.    Defendant's Exhibit 26 Must Be Excluded

Plaintiffs object to the admission of Defendant's Exhibit 26 on the basis that defendant failed to establish the foundation for its admission, and that the exhibit constitutes inadmissible hearsay.  See ECF No. 193-1 at 2; ECF No. 198 at 2.  Plaintiffs argue that the document, which the parties agree was created by Westinghouse, should not be admitted as a business record kept in the ordinary course of plaintiffs' business because defendant did not demonstrate at trial that the requirements of FRE 803(6) are satisfied.  See ECF No. 198 at 2-4.  Specifically, despite the fact that Mr. Richard Loftin testified that "he recognized [Defendant's Exhibit 26], and that it would have been kept in the ordinary course of [plaintiffs'] business," ECF No. 196 at 2, plaintiffs contend that defendant did not elicit testimony to support a finding that the document was "made at or near the time by—or from information transmitted by—someone with knowledge," as required by FRE 803(6)(A).  FRE 803(6)(A); see also ECF No. 198 at 2-4.  In addition, plaintiffs argue that while the document may be a Westinghouse business record, it is not plaintiffs' business record, and therefore Mr. Loftin's testimony is insufficient to support its admission.  See id. at 4-5.

In response, defendant argues that the application of FRE 803(6) has been modified by the Federal Circuit with regard to documents incorporated into a business's

records.  See ECF No. 200 at 5.  After reviewing relevant authority, the Federal Circuit explained:

> The above cases hold that Rule 803(6) does not require that the document actually be prepared by the business entity proffering the document.  Rather, the cases stress two factors, indicating reliability, that would allow an incorporated document to be admitted based upon the foundation testimony of a witness with first-hand knowledge of the record keeping procedures of the incorporating business, even though the business did not actually prepare the document. The first factor is that the incorporating business rely upon the accuracy of the document incorporated and the second is that there are other circumstances indicating the trustworthiness of the document. See, e.g., Munoz v. Strahm Farms, Inc., 69 F.3d 501, 503 (Fed. Cir. 1995) ("Reliability is the basis for admitting evidence under the business records exception.").

Air Land Forwarders, Inc. v. United States, 172 F.3d 1338, 1343 (Fed. Cir. 1999).  According to this binding precedent, Defendant's Exhibit 26 should be admitted if defendant has demonstrated that:  (1) plaintiffs relied on the accuracy of the Westinghouse document, and (2) other circumstances surrounding the creation or incorporation of the document indicate that it is trustworthy.  See id.

Defendant did not make this showing at trial.  When asked by defendant's counsel whether he recognized Defendant's Exhibit 26, Mr. Loftin stated:

A.  (Document review.)

It appears to be a Westinghouse field services report on completion of work.

Q.  All right.  Is this a document that would have been kept in the normal course of [plaintiffs'] business?

A.  I believe so, yes.

ECF No. 170 at 181.  After the court heard an objection to the admission of the exhibit from plaintiffs' counsel, and argument thereon, Mr. Loftin continued his testimony as follows:

Q.  Mr. Loftin, during your time, your 43 years working at Southern Nuclear Company, would you in the normal course of your business come across documents similar to the one in front of you?

A.      Something similar but not exact.  This would be an internal memo within Westinghouse.  Then it would generate a similar document, probably transmitting this, to the company.  But this is the first step on getting a services report to us.

Q.      I see.  And were you familiar with services reports being delivered to you in the manner you just described?

A.      Yes.

Q.      And does this, to the best of your knowledge, appear to be one such services report that you dealt with in the normal course of your business?

A.      I would have to say yes.  It has the same format and information.

Id. at 185.  After these exchanges, the document was conditionally admitted, see id. at 186, and defendant's counsel proceeded to review the substance of the document with Mr. Loftin, see id. at 186-89.

In neither the testimony identified by the parties nor the testimony otherwise reviewed by the court, did defendant's counsel ask Mr. Loftin whether plaintiffs relied on the accuracy of the Westinghouse document in the normal course of business.  In fact, defendant's counsel did not elicit any explanation from Mr. Loftin as to how such Westinghouse reports were used or why they were kept by plaintiffs.  Accordingly, even under the modified requirements of FRE 803(6), as identified by the Federal Circuit in Air Land Forwarders, 172 F.3d at 1343, defendant has failed to establish the admissibility of the Westinghouse report, and Defendant's Exhibit 26 is excluded.

B.      Defendant's Exhibit 27 (Issue Number 22)

Defendant also sought to admit Defendant's Exhibit 27, "a January 22, 2007 operational experience (OE) report by the Institute of Nuclear Power Operations (INPO) regarding the Nozzleless Handling Tool (NHT)," based on Mr. Loftin's testimony at trial.  ECF No. 196 at 3.  When asked by defendant's counsel whether he recognized Defendant's Exhibit 27, Mr. Loftin stated:

A.      (Document review.)

        In general, yes.  It's an OE document that's sent out by [Institute of Nuclear Power Operations (INPO)].

Q.      All right.  And is this a document that would have been kept in [plaintiffs']
        normal course of business?

A.      Not necessarily, no.

Q.      All right, and why not?

A.      It's available on the INPO website.

Q.      I see.

. . .

Q.      So does that mean that this is a publicly available document?

A.      No.  Only members of INPO can get it.

Q.      [Are plaintiffs] member[s] of INPO?

A.      Yes.

. . .

A.      At the time of my retirement, they were a member of INPO.

Q.      I see.  And the date on this document is January 22nd, 2007; is that correct?

A.      Yes, it is.

Q.      And [were plaintiffs] member[s] of the INPO at that time?

A.      Yes.

Q.      And do you recall seeing this document before?

A.      Specifically, no.  I may have, but I can't tell you with certainty that I have
        seen this document.

. . .

Q.      Mr. Loftin, can you remind me what type of document you said this was?

A.      It's an OE, operational experience.

27

Q.   Thank you.  And did you deal with OE—operational experience documents during your time working with [plaintiffs]?

A.   Some, yes.

Q.   All right.  And you recognize this as that type of document?

A.   This is that type of document.

ECF No. 170 at 190-93.

According to defendant, on the basis of this testimony, Defendant's Exhibit 27 should be admitted under the modified version of FRE 803(6), as a record created by the INPO, but incorporated into plaintiffs' business records.  See ECF No. 200 at 7.  The court finds that defendant did not lay a sufficient foundation to establish the application of that hearsay exception.  First, Mr. Loftin stated that the INPO document is "[n]ot necessarily" a document that would be kept in the normal course of conducting plaintiffs' business.  See ECF No. 170 at 191.  Furthermore, as with Defendant's Exhibit 26, defendant failed to elicit any testimony from Mr. Loftin that plaintiffs relied on the accuracy of the document, and thus cannot satisfy the test articulated by the Federal Circuit in Air Land Forwarders, 172 F.3d at 1343.  As such, plaintiffs' objection is sustained, and Defendant's Exhibit 27 is excluded.

III.   Withdrawn Objections

The parties have identified four objections raised at trial that have now been withdrawn by the objecting party.  Accordingly, the following associated evidence, as reflected on the parties' chart outlining unresolved evidentiary issues, is admitted into the trial record:

(1)   Issue Number 19:  Testimony of Mr. Metcalfe regarding the rate of return issue offered on March 5, 2020, see ECF No. 176 at 25-35 (Tr. 2833:2-2843:23);

(2)   Issue Number 20:  Defendant's Exhibit 104, conditionally admitted on February 26, 2020, see ECF No. 169 at 82 (Tr. 1455:4-9);

(3)   Issue Number 23:  Mr. Neil Skogland's rebuttal testimony regarding repair methods offered on February 28, 2020, see ECF No. 171 at 104-05, 108-19 (Tr. 1976:4-1977:3, 1980:20-1991:17); and

(4)     <u>Issue Number 24</u>:  Mr. David Weber's rebuttal testimony regarding repair methods offered on March 4, 2020, <u>see</u> ECF No. 175 at 115-188 (Tr. 2689:19-2762:22).

<u>See</u> ECF No. 193-1 at 2-3.


IV.     Conclusion

In this order, the court has ruled on most of the evidentiary issues presented by the parties, but several issues—detailed below—remain outstanding.  As such, the evidentiary record in this case will remain open until those matters are resolved.

Accordingly,

(1)     Plaintiffs' Exhibit 115 (Issue Number 1) is **ADMITTED in part**, and **EXCLUDED in part**, as follows:

      (a)     Pages 1 through 31 are **ADMITTED**, and

      (b)     Pages 32 through 116 are **EXCLUDED**;

(2)     Clay Channell's testimony regarding cask delivery delays (Issue Number 2) is **ADMITTED**;

(3)     Plaintiffs' Exhibit 138 (Issue Number 3) is **ADMITTED in part**, **EXCLUDED in part**, and will be **CONSIDERED** as follows:

      (a)     Page 1 will be **CONSIDERED** as a **demonstrative exhibit**;

      (b)     Pages 3 through 5 are **ADMITTED**;

      (c)     Pages 7 through 35 are **ADMITTED**;

      (d)     Pages 36 through 86 are **EXCLUDED**; and

      (e)     Pages 87 through 125 are **EXCLUDED**;

(4)     Cale Martin's testimony (Issue Number 7) is **ADMITTED**;

(5)     Plaintiffs' Exhibit 141 (Issue Number 10) is **ADMITTED**;

(6)     Plaintiffs' Exhibit 143 (Issue Number 8) is **ADMITTED**;

(7)     Plaintiffs' Exhibit 144 (Issue Number 9) is **ADMITTED**;

(8)     Plaintiffs' Exhibit 142 (Issue Number 12) will be **CONSIDERED** as a **demonstrative exhibit**;

(9)     Plaintiffs' Exhibit 145 (Issue Number 11) is **ADMITTED**;

(10)    Plaintiffs' Exhibit 139 (Issue Number 13) is **EXCLUDED**;

(11)    Jimmy Cash's testimony regarding Plaintiffs' Exhibit 139 (Issue Number 14) is **EXCLUDED**;

(12)    Chalmer Myer's testimony regarding Plaintiffs' Exhibit 139 (Issue Number 15) is **EXCLUDED**;

(13)    Neil Skogland's testimony regarding Plaintiffs' Exhibit 139 (Issue Number 16) is **EXCLUDED**;

(14)    Defendant's Exhibits 172A, 173A, 174A, and 175A (Issue Number 17) are **ADMITTED**; and Defendant's Exhibits 172, 173, 174, and 175 are **EXCLUDED**;

(15)    Kenneth Metcalfe's testimony regarding commingling of O&M and capital (Issue Number 18) is **ADMITTED**;

(16)    Kenneth Metcalfe's testimony regarding the rate of return (Issue Number 19) is **ADMITTED**;

(17)    Defendant's Exhibit 104 (Issue Number 20) is **ADMITTED**;

(18)    Defendant's Exhibit 26 (Issue Number 21) is **EXCLUDED**;

(19)    Defendant's Exhibit 27 (Issue Number 22) is **EXCLUDED**;

(20)    Neil Skogland's rebuttal testimony (Issue Number 23) is **ADMITTED**;

(21)    Dave Weber's rebuttal testimony (Issue Number 24) is **ADMITTED**;

(22)    On or before **December 4, 2020**, the parties are directed to **CONFER** and **FILE** a **joint status report** informing the court as to:

     (a)     the effect of the partial admission of Plaintiffs' Exhibit 138 (Issue Number 3) on the admissibility of the testimony regarding that exhibit offered by Clay Channell (Issue Number 4); Chalmer Myer (Issue Number 5), and Kenneth Metcalfe (Issue Number 6); and

     (b)     whether any redactions are required before the court makes this order publicly available, and if so, attaching an agreed-upon proposed redacted version of the order;

(23)     On or before **December 4, 2020**, plaintiffs are directed to **FILE** a **notice** attaching **clean copies** (without any handwritten markings) of Exhibit 115 (pages 1 through 31), and the portions of Exhibit 138 deemed admissible in this order (pages 3 through 5 and 7 through 35) for inclusion in the record; and

(24)     On or before **December 4, 2020**, the parties shall **FILE** any **motions for reconsideration** of the rulings in this order.

IT IS SO ORDERED.

                                     s/Patricia E. Campbell-Smith
                                     PATRICIA E. CAMPBELL-SMITH
                                     Judge