# In the United States Court of Federal Claims

Nos. 14-167C & 14-168C

(E-filed: September 21, 2021)[1]

|  |  |
|---|---|
| GEORGIA POWER COMPANY and ALABAMA POWER COMPANY, <br><br>           Plaintiffs, <br><br>      v. <br><br> THE UNITED STATES, <br><br>           Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Motion for Reconsideration; RCFC 59(a); FRE 602; FRE 803(6); FRE 807. |

Alan T. Rogers, Birmingham, AL, for plaintiffs.  Adam K. Israel and Sloan B. Phillips, of counsel.

Borislav Kushnir, Trial Attorney, with whom were Jeffrey Bossert Clark,[2] Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Lisa L. Donahue, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Jimmy S. McBirney, Margaret J. Jantzen, Kelly A. Krystyniak, and John M. McAdams, of counsel.  Jane K. Taylor, United States Department of Energy, of counsel.

---

[1]   This opinion and order was issued under seal on August 25, 2021.  See ECF No. 219.  The parties were invited to identify propriety or confidential material subject to deletion on the basis that the material is protected/privileged.  No redactions were proposed by the parties.  See ECF No. 220.  Thus, the sealed and public version of this order are identical, except for the publication date and this footnote.

[2]   Brian M. Boynton replaced Mr. Clark as Acting Assistant Attorney General on defendant's response to plaintiffs' motion for reconsideration, ECF No. 212, its reply in support of its motion for reconsideration, ECF No. 213, and its supplemental brief, ECF No. 218.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

Presently before the court are the parties' motions for reconsideration of the court's November 4, 2020 post-trial evidentiary rulings.[3]  See ECF No. 205 (defendant's motion for reconsideration); ECF No. 206 (plaintiffs' motion for partial reconsideration); see also ECF No. 202 (evidentiary rulings order).  The briefing is now complete, and the motions are ripe for decision.

In ruling on defendant's motion, the court has considered the following:  (1) defendant's motion for reconsideration, ECF No. 205; (2) plaintiffs' response, ECF No. 211; (3) defendant's reply, ECF No. 213; (4) plaintiffs' supplemental brief, ECF No. 217; and (5) defendant's supplemental brief, ECF No. 218.  And in ruling on plaintiffs' motion, the court has considered the following:  (1) plaintiffs' motion for partial reconsideration, ECF No. 206; (2) defendant's response, ECF No. 212; and (3) plaintiffs' reply, ECF No. 214.  The court has also considered relevant portions of the trial transcript.  See ECF Nos. 162-77.

The court has evaluated all of the parties' arguments and addresses the issues that are pertinent to the court's rulings in this opinion.  For the following reasons, defendant's motion for reconsideration is, **GRANTED in part,** and **DENIED in part**, and plaintiffs' motion for reconsideration is **DENIED**.

I.      Background

The court conducted a trial on damages in these cases from February 18, 2020, through March 6, 2020.  The evidentiary record of the trial remains open to allow the court to review written arguments from the parties before ruling on the admissibility of certain pieces of evidence.  After considering the parties' submissions, the court issued rulings on those evidentiary issues on November 4, 2020.  See ECF No. 202.

On December 4, 2020, both parties moved for reconsideration of a number of those rulings.  See ECF 205 (defendant's motion); ECF No. 206 (plaintiffs' motion).  After both parties filed the requisite responses and replies, on May 3, 2021, the court directed the parties to file supplemental briefs to address in more detail the nuances of the business records exception as applied to documents prepared in anticipation of litigation.

---

[3]     All electronic case filings referenced in this order appear on the Georgia Power Co. v. United States, Case No. 14-167C docket unless otherwise stated.  The court notes that these cases were consolidated for purposes of discovery and trial.  See ECF No. 23 (order granting request to consolidate).

See ECF No. 216 (May 3, 2021 order). With the supplemental briefing now complete, the court will make the final rulings related to evidentiary issues.

This court applies the Federal Rules of Evidence (FRE) when evaluating the admissibility of evidence offered in proceedings before it. See 28 U.S.C. § 2503(b); FRE 1101(a). The court will rule on each of the issues presented by the parties in their briefs, but reminds the parties that if they have omitted a particular section of proffered testimony or a conditionally admitted exhibit, that evidence will not be addressed by the court, and therefore will not be part of the evidentiary record in these cases.

II.     Legal Standards

Rule 59(a) of the Rules of the United States Court of Federal Claims (RCFC) governs motions for reconsideration, and provides that rehearing or reconsideration may be granted: "(A) for any reason for which a new trial has heretofore been granted in an action at law in federal court; (B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or (C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States." RCFC 59(a)(1).

The court, "in its discretion, 'may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice.'" Biery v. United States, 818 F.3d 704, 711 (Fed. Cir. 2016) (quoting Young v. United States, 94 Fed. Cl. 671, 674 (2010)). Motions for reconsideration must be supported "'by a showing of extraordinary circumstances which justify relief.'" Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd, 250 F.3d 762 (Fed. Cir. 2000)). To prevail on a motion for reconsideration based on manifest injustice, a party must demonstrate "that any injustice is apparent to the point of being almost indisputable." Fillmore Equip. of Holland, Inc. v. United States, 105 Fed. Cl. 1, 8 (2012), aff'd, No. 2013-5048, 2013 WL 5450651 (Fed. Cir. June 18, 2013) (internal quotation marks and citation omitted).

Such a motion, however, "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1 (2d ed. 1995)). In addition, "a motion for reconsideration is not intended . . . to give an 'unhappy litigant an additional chance to sway' the court." Matthews v. United States, 73 Fed. Cl. 524, 525 (2006) (quoting Froudi v. United States, 22 Cl. Ct. 290, 300 (1991)); see also Fillmore, 105 Fed. Cl. at 8 (stating that the court "will not grant a motion for reconsideration if the movant merely reasserts . . . arguments previously made . . . all of

3

which were carefully considered by the Court") (internal quotation marks and citation omitted).

III.   Analysis

    A.   Defendant's Motion for Reconsideration

        1.   Clay Channell's Testimony Regarding Cask Delivery Delays (Issue Number 2)[4]

Defendant first asks the court to reconsider its ruling that Mr. Clay Channell's testimony regarding cask delivery delays is admissible. See ECF No. 205 at 6-9. The specific testimony at issue is as follows:

> Q.   Mr. Channell, my question was: Do you have an understanding as to why the decision was made to delay deliver[y] of those casks in 2012 versus going ahead and accepting delivery of those casks and finding a place on site to store them?
>
> A.   Similar to the first time we had to undergo an adjustment on the delivery schedule, it was based on a financial resource issue. I mean, we just—there's no need to spend money on canisters that you don't need right away. If you project out your loadings and you have enough on site, it's better to—it was better to extend that and delay that capital expenditure. In addition, we didn't have room for them. There's no reason to spend money on canisters you don't need and when you don't have room for them, so we made the decision to pay Holtec. It seemed reasonable at the time to pay them storage fees and delay that delivery.

ECF No. 163 at 164-65 (Channell); see also ECF No. 193-1 at 1 (revised chart of evidentiary issues identifying proffer).

According to defendant, the court committed a clear error by admitting Mr. Channell's testimony because "[a]lthough he did not attempt to quote out-of-court email communications, Mr. Channell's testimony about plaintiffs' decision to delay cask deliveries in 2012 was based entirely on those emails," and thus his testimony was based on inadmissible hearsay. ECF No. 205 at 9. In making this argument, defendant observes that "the [c]ourt seems to have distinguished between testimony that repeats

---

[4] The issue numbers associated with each section in this order correspond to the number system reflected in the parties' chart identifying evidentiary issues for this court to resolve. See ECF No. 193-1.

inadmissible hearsay, and factual testimony that is merely based on inadmissible hearsay." Id. at 7. Defendant supports its argument with authority that it asserts stands for the proposition that courts should "exclude factual testimony based on inadmissible hearsay, even where the witness does not purport to repeat or quote the hearsay statement itself." Id. at 8 (collecting cases).

Defendant misunderstands the basis for the court's ruling. The court did not find that Mr. Channell could testify about inadmissible hearsay evidence so long as he did not quote that evidence directly. Rather, the court rejected defendant's argument that Mr. Channell's testimony was based entirely on inadmissible emails the first time it urged the court to make such a finding, see ECF No. 202 at 5, and instead held, based on specific portions of Mr. Channell's testimony, that "Mr. Channell's experience as plaintiffs' dry storage program manager gives him adequate personal knowledge to testify as to his understanding of decisions related to the procurement of storage casks," id. at 6.

The court understands that defendant disagrees with this conclusion, but defendant both misconstrues the court's reasoning and bases its request for reconsideration on the same argument it advanced when it initially objected to the admission of Mr. Channell's testimony. See ECF No. 199 at 19 (defendant's response to plaintiff's supplemental brief, submitted prior to the court's original evidentiary ruling, arguing that Mr. Channell's "testimony was based entirely on emails from another employee of plaintiffs"). As noted above, "a motion for reconsideration is not intended . . . to give an 'unhappy litigant an additional chance to sway' the court." Matthews, 73 Fed. Cl. at 525 (quoting Froudi, 22 Cl. Ct. at 300); see also Fillmore, 105 Fed. Cl. at 8 (stating that the court "will not grant a motion for reconsideration if the movant merely reasserts . . . arguments previously made . . . all of which were carefully considered by the Court") (internal quotation marks and citation omitted).

Accordingly, the court declines to reconsider its decision to admit Mr. Channell's testimony on this issue, and therefore, denies defendant's motion with regard to the same.

    2.  Pages Three Through Five of Plaintiffs' Exhibit 138 (Issue Number 3), and Plaintiffs' Exhibit 145 (Issue Number 11)

The court admitted pages three through five of Plaintiffs' Exhibit 138, and the entirety of Plaintiffs' Exhibit 145 under the business records hearsay exception, FRE 803(6), and in the alternative, under the residual hearsay exception, FRE 807. See ECF No. 202 at 9-10, 15-16. Defendant seeks reconsideration of these rulings on the basis of clear legal error. See ECF No. 205 at 9. The court will do so, in part.

In its initial ruling, the court held that "[w]hile plaintiffs' primary business involves operating nuclear power plants, as a secondary matter, defendant has forced plaintiffs into the business of continuous litigation as a result of defendant's continuing

5

breach." ECF No. 202 at 9. The court admitted the documents at issue as business records created as part of conducting that secondary business of litigation. See id. at 10, 15.

Defendant argues, in its motion for reconsideration, that this court's "holding—that documents created for the purpose of litigation may be recognized as records of a regularly conducted activity, and consequently excepted from the prohibition against hearsay pursuant to FRE 803(6)—contravenes binding precedent." Id. at 11. Defendant does not argue that plaintiff has not, in fact, been forced into the secondary business of litigation by its continuing, chronic breach; rather, defendant argues that, even accepting that fact, the business records exception cannot apply. See id. at 11-13.

To support its argument, defendant primarily relies on two cases decided by the Supreme Court of the United States—Palmer v. Hoffman, 318 U.S. 109 (1943) and Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009). In Palmer, the Court considered whether the trial court erred in admitting as evidence at trial a railroad accident report that included the statement from the engineer of the train made to a railroad employee and an employee of the state utility commission. See Palmer, 318 U.S. at 111. The court concluded that the accident report did not qualify as a business record, and thus was improperly admitted, because it was "not a record made for the systematic conduct of the business as a business." Id. at 113. The court also reasoned that:

> An accident report may affect that business in the sense that it affords information on which the management may act. It is not, however, typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls.

Id. The distinction underlying the Court's reasoning in Palmer appears to be between activities that are integral to the operation of the business, and those that are merely incidental to the same. See id. (referring to the "[p]reparation of cases for trial" as "incidental" to conduct of a business).

In Melendez-Diaz—a criminal case that addresses the intersection of the business records exception and the Confrontation Clause of the Sixth Amendment to the United States Constitution—the Court referred to its opinion in Palmer, characterizing its holding as follows:

> Documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status. See Fed. Rule Evid. 803(6). But that is not the case if the regularly conducted business activity is the production of evidence for use at trial. Our decision in Palmer v. Hoffman, [318 U.S. 109 (1943)], made that distinction clear.

6

Melendez-Diaz, 557 U.S. at 321. Here, defendant relies on this broad statement to support its position that plaintiffs' documents are inadmissible. See ECF No. 205 at 11.

      There are a number of good reasons that both Palmer and Melendez-Diaz are distinguishable from the case at bar. As an initial matter, in neither case was the Court addressing a set of facts that are analogous to the facts now before the court. Neither case involved a continuing breach of contract, and neither case involved a circumstance in which the federal government had forced a party to undertake an otherwise unnecessary activity, and to file successive lawsuits—with no discernable end—to recover the damages suffered as a result. See generally Palmer, 318 U.S. 109, Melendez-Diaz, 557 U.S. 305. In addition, Melendez-Diaz is a criminal case in which the court considered the effect of the Sixth Amendment right to confrontation on the business records exception. See Melendez-Diaz, 557 U.S. at 321-24. Those constitutional considerations are not present here.

      The court will not reconsider its holding that "defendant has forced plaintiffs into the business of continuous litigation as a result of defendant's continuing breach." ECF No. 202 at 9. It is clear, based on the record in this case and the history of related litigation, that defendant has caused a chronic continuing breach of the contracts at issue, and that, as a result of defendant's failure to abide by its obligations, plaintiffs must indefinitely provide and manage storage for its spent nuclear fuel.[5] Moreover, the only

---

[5]     In 2000, the United States Court of Appeals for the Federal Circuit affirmed this court's decision that defendant had partially breached the Standard Contract by failing to dispose of plaintiffs' spent nuclear fuel. See Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1343 (Fed. Cir. 2000). The Circuit further held, in Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1376-78 (Fed. Cir. 2005), that because the breach was partial, plaintiffs were required to file successive cases to recover the costs incurred for storage in the preceding period. See id. at 1378 ("In the case of the continuing contractual obligations owed after an initial suit for partial breach has been filed, subsequent claims for future damages are considered to accrue for the purposes of the statute of limitations at the time such damages are incurred. Accordingly, Indiana Michigan must bring any future actions for damages related to [the Department of Energy's] breach of the Standard Contract within six years of incurring such damages."). Those cases form the foundation for a myriad of cases that, like the case at bar, involve nuclear utilities throughout the country repeatedly seeking damages for defendant's continuing breach. The ongoing litigation in this court involves both currently operating utilities and plants that have ceased operations and are left storing their spent nuclear fuel. See, e.g., Entergy Arkansas, LLC v. United States, Case No. 21-1533C, ECF No. 1 at 2-3 (currently operating); Entergy Nuclear Indian Point 2, LLC v. United States, Case No. 21-1401, ECF No. 1 at 4 (ceased operations in 1974, 2020, and 2021); Yankee Atomic Elec. Co. v. United States, Case No. 21-1119C, ECF No. 1 at 7 (ceased operations in 1992, completed decommissioning in 2007); Maine Yankee Atomic Power Co. v. United States, 21-1118C, ECF No. 1 at 7 (ceased operations in 1996, completed decommissioning in 2005); Connecticut Yankee Atomic Power v. United States, 21-1116C, ECF No. 1 at 7 (ceased operations in 1996, decommissioning completed in 2007); Boston Edison Co. v. United States, Case No. 20-529C, ECF No. 1 at 2-3

way for plaintiffs to recover the costs they have incurred in doing so is through successive rounds of litigation. Put another way, all records created by plaintiffs related to their storage efforts are, essentially, records created in anticipation of the litigation that defendant's actions have forced plaintiffs to undertake. It is simply unfair to allow defendant to exploit the rules of evidence to prevent plaintiffs from introducing such evidence.

Nevertheless, the Supreme Court's broad language in Melendez-Diaz does not leave room for this court to apply the business records exception in a nuanced manner to account for this most unique set of circumstances, despite the very different set of facts on which that case was decided. Accordingly, the court will grant defendant's motion for reconsideration of the court's decision to admit pages three through five of Plaintiffs' Exhibit 138, and the entirety of Plaintiffs' Exhibit 145 under the business records hearsay exception, FRE 803(6). See ECF No. 202 at 9-10, 15.

In the court's view, however, the evidence remains properly admitted under FRE 807. See ECF No. 202 at 10, 15-16. Defendant contends, in its motion, that the court "committed clear legal error" by admitting pages three through five of Plaintiffs' Exhibit 138 and Plaintiffs' Exhibit 145 into evidence under FRE 807, see ECF No. 205 at 13, but presents no binding precedent that requires a different result, see id. at 13-16; ECF No. 213 at 4-10. Instead, defendant's argument that FRE 807 should not apply to this evidence amounts to mere disagreement with the court's determination that the evidence, and unique circumstances surrounding its creation, meet the test for admission under the residual exception. Defendant is not entitled to reconsideration on that basis. See Matthews, 73 Fed. Cl. at 525 (stating that "a motion for reconsideration is not intended . . . to give an 'unhappy litigant an additional chance to sway' the court") (quoting Froudi, 22 Cl. Ct. at 300).

---

(ceased operations); Entergy Louisiana, LLC v. United States, Case No. 20-16C, ECF No. 1 at 3 (currently operating); So. California Edison Co. v. United States, Case No. 19-1792C, ECF No. 1 at 3-4 (ceased operations in 1992, 2012, and 2013); Entergy Nuclear Indian Point 2, LLC v. United States, Case No. 19-949, ECF No. 1 at 7 (two plants continuing operations, 1 plant ceased operations); Dairyland Power Coop. v. United States, Case No. 18-1922C, ECF No. 1 at 4-5 (ceased operations in 1987 and is in the process of decommissioning); Northstar Vermont Yankee, LLC v. United States, Case No. 18-1209C, ECF No. 1 at 3 (ceased operations in 2014); Duke Energy Progress, LLC v. United States, 18-891C, ECF No. 1 at 4 (involves both currently operating plants and one plant that has ceased operations); and Dominion Energy Kewaunee, Inc. v. United States, Case No. 18-808C, ECF No. 1 at 3 (ceased operations in 2013). The court is unaware of any credible plan for defendant's performance under the Standard Contract. As such, the indefinite, successive rounds of litigation will require plaintiffs—as part of their business operations—to continue documenting the costs associated with their storage programs in order to prove their damages at successive trials.

Accordingly, the court declines to reconsider its decision that pages three through five of Plaintiffs' Exhibit 138 and Plaintiffs' Exhibit 145 are admissible pursuant to FRE 807, and denies defendant's motion with regard to the same.

    B.    Plaintiffs' Motion for Reconsideration

        1.    Plaintiffs' Exhibit 139 (Issue Number 13)

In its evidentiary ruling, the court excluded Plaintiffs' Exhibit 139 from the trial record because, despite defendant's hearsay objection at trial, and plaintiffs' stated position that the exhibit should be admitted as a business record, plaintiffs "omit[ted] any substantive discussion about the admissibility of Plaintiffs' Exhibit 139 in their briefs . . . before the court." ECF No. 202 at 16. Plaintiffs seek reconsideration of this ruling on the basis that although they "did not explicitly rehash their argument in post-trial briefing, they advocated their position for admission of [Plaintiffs' Exhibit] 139 . . . as a business record in full during trial." ECF No. 206 at 18 (citing ECF No. 169 at 167-69 (Myer)).

The problem for plaintiffs is that the court made clear, on a number of occasions, that with respect to evidentiary issues not resolved during trial, it expected the parties to argue their positions in post-trial briefing. See, e.g., ECF No. 139 at 1 (court's January 23, 2020 order stating that "[t]he parties must, both at trial and in any post-trial submissions, explicitly identify, and explain the significance of, any part of the record on which they seek to rely. In other words, the parties cannot and should not expect the court to review the entire record and independently construct an argument to support either party's case"); id. ("Following trial, the parties will have the opportunity to argue objections on paper before the trial record is officially closed, and before post-trial briefing begins."); ECF No. 160 (court's March 6, 2020 post-trial order stating "[a]s addressed in the court's pretrial orders and at trial, the evidentiary record of the trial remains open to allow the parties an opportunity to review the trial transcript and make considered arguments with regard to proffered testimony and conditionally admitted exhibits"); ECF No. 176 at 44 (the court explaining that following trial "[t]he next step, as we've indicated, will be briefing on the issues of the exhibits that have been conditionally admitted and to hear argument about the proffered testimony so that we can be clear about which portions, if any, will become part of the record . . . and then we can close the record"); ECF No. 177 at 32 ("As we have discussed before, the record in this proceeding will remain open pending the evidentiary rulings that are to be made post-trial that we have referred to in both the pretrial orders and during the course of the trial proceedings."); id. at 35 (the court stating that post-trial briefing would be the parties' opportunity "to resolve the outstanding issues that pertain to the record before we close the record").

Even during the very exchange cited by plaintiffs to demonstrate that they "advocated their position for admission of [Plaintiffs' Exhibit] 139 . . . as a business

9

record in full during trial," the court repeated its intent to consider substantive arguments at a later time. ECF No. 206 at 18; ECF No. 169 at 169. When plaintiffs' counsel began to argue that the exhibit was a business record the court first said: "I don't want you to argue the full exception. I'm just trying to make sure that the business record exception falls within this larger context of an issue to be decided later, which is whether that can pertain to litigation as part of [plaintiffs'] kind of business." ECF No. 169 at 169. Plaintiffs' counsel responded "That's correct, Your Honor." Id. And just following the cited passage, the court explained:

> I just needed to clarify that because that is not an issue I'm going to resolve during trial. We have indicated that that's one that we'll get the briefing about later.
>
> . . .
>
> So to the extent that that is the point on which Plaintiffs are relying, I'm not going to convert the conditional admission to admission. I would like to evaluate all the other challenges that are being made to the document now, and that's what this is doing, is preserving a record about which we may argue further on legal points later. But to the extent that we can get fact testimony about what these documents reflect and that the witnesses—the percipient witnesses know about that, that's where we're going to spend our time together.

Id. at 169-70 (Myer). Thus, plaintiffs were clearly on notice that the court expected to rule on objections based on written arguments, after the conclusion of trial. The court must stand by this expectation because enforcing the ground rules of which the parties have been put on notice is among the most important ways in which the court ensures the fair administration of justice.

Despite noting the issues related to Plaintiffs' Exhibit 139 in their initial evidentiary briefs, plaintiffs, admittedly, failed to make their substantive argument at the appropriate time. See ECF No. 197 at 25, 27 (plaintiffs' opening post-trial brief on evidentiary issues); ECF No. 201 at 24-27 (plaintiffs' reply on evidentiary issues); ECF No. 202 at 16 ("For a reason plaintiffs do not explain, they omit any substantive discussion about the admissibility of Plaintiffs' Exhibit 139 in their [post-trial evidentiary] briefs."); ECF No. 206 at 18 (plaintiffs stating that they "did not explicitly rehash their argument in post-trial briefing"); ECF No. 214 at 3-4 ("Should [p]laintiffs have expressly reincorporated the argument that they had already fully made on the record during post-trial evidentiary briefing? Yes.").

Plaintiffs' failure in this regard does not amount to "an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal

error or prevent manifest injustice.'" Biery, 818 F.3d at 711 (quoting Young, 94 Fed. Cl. at 674). Nor is it "a showing of extraordinary circumstances which justify relief.'" Caldwell, 391 F.3d at 1235 (quoting Fru-Con Constr., 44 Fed. Cl. at 300). Accordingly, the court declines to reconsider its ruling to exclude Plaintiffs' Exhibit 139, and denies plaintiffs' motion on that issue.

> 2. Mr. Chalmer Myer's Testimony Regarding Plaintiffs' Exhibit 139 (Issue Number 15)

Plaintiffs also ask the court to reconsider its decision to exclude Mr. Chalmer Myer's testimony regarding Plaintiffs' Exhibit 139. See ECF No. 206 at 10-17. The court excluded Mr. Myer's testimony on the basis that "the [trial] transcript clearly indicates that the challenged testimony was made in the form of proffers, conditioned on the admission of the underlying document. Because the court has excluded Plaintiffs' Exhibit 139, it must do the same with regard to the conditional testimony from . . . Mr. Myer." ECF No. 202 at 18. In their motion, plaintiffs argue that Plaintiffs' Exhibit 139 "is a separate piece of evidence from Mr. Myer's testimony about the cost estimate that he personally prepared, and they should be analyzed individually." ECF No. 206 at 7. Plaintiffs contend that "courts from around the nation have rejected the notion that testimony and documentary evidence on the same topic must either be admitted or rejected together." Id. at 7-8.

To support this argument, plaintiffs cite Continental Baking Co. v. United States, 281 F.2d 137 (6th Cir. 1960).[6] In Continental Baking, the United States Court of Appeals for the Sixth Circuit reviewed the trial court's decision to admit a telegram after the author of the telegram testified to the same facts relayed in the document. See Cont'l Baking, 281 F.2d at 151. The Sixth Circuit affirmed admission of the document, explaining as follows:

> Exhibit 73 was a telegram from Leonard Heuberger of the Memphis Restaurant Association to the President of Continental in New York. It was originally offered as an exhibit to Mr. Heuberger's testimony (although withdrawn and put in evidence later) and contains nothing which Mr. Heuberger did not testify to on his direct examination. Appellants had full opportunity to cross-examine Mr. Heuberger as to the occurrence which was the subject of the telegram. Although the telegram alone might be considered hearsay there was no error in its admission into evidence in light of the fact that Mr. Heuberger testified to, and was cross-examined on, the same matter.

---

[6] Plaintiffs also cite Bethlehem Steel Corp. v. Avondale Shipyards, Inc., No. 90-4273, 1994 WL 33994 (E.D. La. Feb. 4, 1994). The court declines to engage in a detailed analysis of this case because it does not materially assist plaintiffs' argument.

11

Id.  The Circuit's discussion of Mr. Heuberger's telegram is brief, but one important distinction from the present issue is clear—Mr. Heuberger testified independently of the telegram that was later admitted.  See id.

Here, plaintiffs' counsel read large portions of Mr. Myer's testimony into the record and then asked Mr. Myer to elaborate on certain aspects of the document.  For example, direct examination on this topic began with a clear direction for the witness to refer directly to the document, as follows:

> Q. Mr. Myer, I'd like to walk through this repair estimate a little bit.  I want to focus first on the first page there.  The portion that's listed under scope of work, do you see that?
>
> A. Yes.

ECF No. 169 at 172.  After asking for some elaboration about the scope of work, plaintiffs' counsel continued to read portions of Plaintiffs' Exhibit 139 into the record:

> Q. Now, Mr. Myer, I want to focus your attention on the bottom third of the page, the paragraph that begins with, "The modification would have been performed."  Do you see that?
>
> A. Yes.
>
> Q. And it says, "The modifications would have been performed during a non-outage work period.  This work would have required a design change package prepared in accordance with SNC procedures.  One of the preferred architect engineering companies already performing work for SNC would have developed the DCP."  Did I read that correctly?

Id. at 173.  Plaintiffs' counsel continued with this method of questioning, directing the witness's attention to specific parts of the document and reading sections of the document into the record, for nearly forty pages of the transcript.  See id. at 172-211.

Thus, while it appears that Mr. Heuberger's testimony at issue in Continental Baking, would have been coherent without the admission of the telegram, Mr. Myer's testimony would make no sense if the court admitted only the portions that did not specifically reference the document.  In other words, Mr. Myer's testimony is too inextricably linked to the inadmissible document to allow it into the record, and the court is unpersuaded that authority offered by plaintiffs disturbs that result.

As such, plaintiffs have failed to demonstrate a valid basis for reconsideration, see Biery, 818 F.3d at 711, and their motion on this issue is denied.

IV. Conclusion

Accordingly, for the foregoing reasons:

(1) Defendant's motion for reconsideration, ECF No. 205, is **GRANTED in part,** for the limited purpose of finding that pages three through five of Plaintiffs' Exhibit 138 (Issue Number 3) are admitted under FRE 807, not under FRE 803(6), and **DENIED in part**, as to all other issues;

(2) Plaintiffs' partial motion for reconsideration, ECF No. 206, is **DENIED**;

(3) The final rulings in the court's November 4, 2020 evidentiary rulings order identifying which evidence is admissible and which evidence is excluded remain **unchanged**, see ECF No. 202 at 29-30; and

(4) On or before **September 24, 2021**, the parties are directed to **CONFER** and **FILE** a **joint status report**:

   (a) informing the court as to whether any outstanding issues remain for resolution before the court closes the trial record in this case;

   (b) proposing a schedule for proceeding with post-trial briefing on the merits of this case; and

   (c) stating whether any redactions are required before the court makes this opinion publicly available, and if so, attaching an agreed-upon proposed redacted version of the opinion.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith  
PATRICIA E. CAMPBELL-SMITH  
Judge